AO 106 (Rev. 04/10) Application for a Search Warrant (USAO CDCA Rev. 01/2013)

# UNITED STATES DISTRICT COURT
for the
Western District of Oklahoma

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
Information Associated with Facebook User ID: ) Case No. MJ-24- 55-AmG
Rachel Richardson (100008586031426) that is Stored at )
Premises Controlled by Meta Platforms Inc. )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, which is incorporated by reference herein.

located in the ___Northern___ District of ___California___ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, which is incorporated by reference herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 846 | Drug conspiracy |
| 21 U.S.C. § 841(a)(1) | Distribution of controlled substances or possession of controlled substances with intent to distribute |

The application is based on these facts:
See attached Affidavit of DEA TFO Peek, which is incorporated by reference herein.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Jimmy J. Peek, Task Force Officer, DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 1/19/2024

*Judge's signature*

City and state: Oklahoma City, Oklahoma

AMANDA MAXFIELD GREEN, U.S. Magistrate Judge
*Printed name and title*

AUSA: Elizabeth Joynes [1/19/2024]

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

IN THE MATTER OF THE SEARCH OF
INFORMATION ASSOCIATED WITH
FACEBOOK USER ID RACHEL
RICHARDSON (100008586031426) THAT
IS STORED AT PREMISES CONTROLLED
BY META PLATFORMS INC.

Case No. _____

**Filed Under Seal**

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Jimmy J. Peek, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this Affidavit in support of an application for a search warrant for information associated with certain Facebook user IDs that are stored at premises owned, maintained, controlled, or operated by Meta Platforms Inc. ("Facebook"), a social networking company headquartered in Menlo Park, California. The information to be searched is described in the following paragraphs and in Attachment A. This Affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A) to require Facebook to disclose to the government records and other information in its possession, pertaining to the subscriber or customer associated with the user ID 100008586031426.

2.      I, Jimmy J. Peek, am a Task Force Officer ("TFO") with the Drug Enforcement Administration ("DEA") and have been such since July 2021 and am currently assigned to the Oklahoma City, Oklahoma District Office. As such, I am an investigative and law enforcement officer of the United States authorized to conduct investigations of, and to make arrests and

seizures for, offenses enumerated in the Controlled Substances Act, Title 21, United States Code. Prior to my current assignment, I was a Captain at the Grady County Sheriff's Office and investigated a large array of crimes including drug distribution / trafficking charges.

3. During my employment in law enforcement, I have received training and conducted investigations related to illicit drugs and the distribution of illicit drugs in violation of Title 21, United States Code, Sections 841(a)(1), 843(b), 846, and others. I have participated in many aspects of drug investigations to include the following: undercover operations, surveillance, search warrants, arrests, reviewing taped conversations and drug records, along with debriefing defendants, informants, and witnesses who had personal knowledge regarding major narcotics trafficking organizations.

4. I have had conversations with and have been in the company of other experienced local, state, and federal law enforcement officers, as well as prosecuting attorneys representing both state and federal systems, concerning narcotics and dangerous drug trafficking activities and criminal violations.

5. Also, I have worked in the company of other experienced law enforcement officers and have discussed their investigative techniques and experiences with them. In the course of investigations, which I have been party to, I have become familiar with the clandestine business practices of drug traffickers and illicit drug traffickers.

6. The facts in this Affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This Affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

2

7.      Based on my training and experience and the facts as set forth in this Affidavit, there is probable cause to believe that violations of 21 U.S.C. § 841 have been committed by Rachel Sierra RICHARDSON and Nicholas Daniel COOK with these violations relating to the fentanyl overdose of Michael Compton. There is also probable cause to search the information described in Attachment A for evidence of these crimes and contraband or fruits of these crimes, as described in Attachment B.

## PROBABLE CAUSE

8.      On December 4, 2023, I was contacted by Grady County Deputies and advised of an overdose at 636 County Street 2800, Minco, Oklahoma 73059. That residence is in the Western District of Oklahoma. Deputies advised me that an individual identified as Micheal COMPTON had overdosed after consuming fentanyl powder. Deputies stated that Compton was unresponsive upon the arrival of Grady County deputies. Two doses of Naloxone ("Narcan") were given to COMPTON, and he bacame alert and was transported to Grady Memorial Hospital for further treatment. Deputies were advised by RICHARDSON that COMPTON had consumed fentanyl powder prior to his collapse. RICHARDSON advised that COMPTON had "smoked" the fentanyl powder. RICHARDSON stated she had purchased the fentanyl powder that was brought to COMPTON's residence. Although it was later determined that the supplier she initially identified was false, RICHARDSON admitted to bringing and providing the fentanyl that caused COMPTON's overdose.

9.      On December 21, 2023, TFO Jimmy Peek and TFO Jamie O'Leary conducted an interview with RICHARDSON at her parents' residence. In a post-*Miranda* interview, TFO

3

Peek confronted RICHARDSON about inconsistencies in the story that she had previously provided to investigators as compared to details investigators had since uncovered.

10. RICHARDSON began by recounting the story she intially provided, but, after being confronted, she stated she would provide the truth and that she had been "protecting" someone. RICHARDSON then stated she was protecting Nick COOK because he was a "friend." RICHARDSON stated she contacted COOK on December 1, 2023 and that he (Cook) had said he would "throw [her] some shit" in exchange for a speaker and a Samsung charger that RICHARDSON owned. Based on my training and experience, I know "shit" was a reference illegal drugs, specifically fentanyl. RICHARDSON stated she sent COOK pictures on Facebook Messenger of both items to facilitate the deal. RICHARDSON was able to show investigators those pictures of the items in her cell phone on Facebook Messenger. This conversation on Facebook Messenger was tied to RICHARDSON's Facebook account, which has Facebook ID 100008586031426. RICHARDSON stated she traveled to COOK's residence on December 2, 2023 from the residence of her friend "Semaj" (who was later identified by investigators as Semaj JONES). She described JONES as another of COOK's "customers."

11. RICHARDSON described COOK as one of her and JONES' "plugs," which is slang for a "source of supply." RICHARDSON further confirmed that COOK, indeed, provided her approximately $20 worth of fentanyl powder in exchange for the speaker and wireless charger on December 2, 2023. RICHARDSON stated that COOK also gave her crack cocaine the following day, December 3, 2023, with the intention that RICHARDSON would sell it. RICHARDSON then stated that COOK was her supplier for fentanyl powder even before this deal. RICHARDSON stated that, that night, she and JONES smoked some of her $20 worth of

4

fentanyl powder from COOK and that she spent the night at COOK's residence. Finally, RICHARDSON confirmed that the fentanyl that caused COMPTON's overdose on December 4, 2023 was provided to her by COOK on December 2, 2023 and that she was absolutely positive of that fact. RICHARDSON provided investigators with an address for COOK.

12. RICHARDSON stated that she took the fentanyl from COOK's residence and traveled to COMPTON's residence. Accordingly, RICHARDSON stated that there was no possibility that the fentanyl which caused COMPTON's overdose could have come from any place other than COOK. Investigators were able to locate an Oklahoma license photograph, and RICHARDSON positively identified COOK from that photograph.

13. Investigators located JONES and conducted an interview with him on December 21, 2023. In that interview, JONES identified COOK as his supplier of fentanyl and stated that he had purchased from him as recently four days prior to the interview. JONES stated he preferred fentanyl powder and described COOK as his "plug" for fentanyl. JONES stated that he knew RICHARDSON and that he met her at COOK's residence. JONES stated that RICHARDSON has brought fentanyl to him at COOK's residence when COOK was indisposed.

14. JONES stated that he had been purchasing fentanyl from COOK for approximately 6 months. JONES was able to positively identify COOK by a license photograph that I provided. JONES was able to provide a phone number for COOK as well.

15. On December 21, 2023, RICHARDSON reported to a detox / treatment facility in Stillwater, Oklahoma; following her initial detox, RICHARDSON then began treatment at a facility in Tulsa, Oklahoma on December 23, 2023. Investigators were contacted by RICHARDSON's parents on December 26, 2023 and advised that RICHARDSON had since

5

fled the treatment facility and her whereabouts were unknown. RICHARDSON's parents stated that she contacted them, requesting money. RICHARDSON remained a fugitive until her arrest on January 5, 2024, at which point she admitted to having used fentanyl as recently as January 4, 2024.

16. I believe that this Affidavit provides sufficient evidence that probable cause exists to require Facebook to furnish stored data for the Facebook username "Rachel Richardson" (Facebook Account ID: 100008586031426). Because RICHARDSON stated, in her December 21, 2023 interview, that she had communicated with COOK via Facebook Messenger and that she also exchanged photographs of the items that she traded for fentanyl powder to COOK through Facebook Messenger, I believe that based on those statements and the corroboration she showed me, there is likely to be further evidence of this drug transaction, as well as other drug-related transactions, in RICHARDSON's Facebook account, specifically, through her use of Facebook Messenger.

17. A preservation request has been submitted to Facebook in order to preserve the stored data related to Facebook username "Rachel Richardson" (Facebook Account: 100008586031426). I therefore request a search warrant requiring Meta Platforms Inc., to furnish data for this Facebook account. Meta Platforms Inc., is in the business of providing electronic communication services to its subscribers. This service includes maintaining records related to subscriber information, communication between subscribers, and stored data utilized by subscribers and maintained by provider pursuant to their service agreements. As a result, the types of information sought by the Government are in fact as a regular course of business kept by Meta Platforms Inc.

## FACEBOOK (META PLATFORMS INC.)

18. In general, providers like Meta Platforms Inc., asks each of their subscribers to provide certain personal identifying information when registering for an account. This information can include the subscriber's full name, physical address, telephone numbers and other identifiers, e-mail addresses, and, for paying subscribers, a means and source of payment (including any credit or bank account number).

19. Providers typically retain certain transactional information about the creation and use of each account on their systems. This information can include the date on which the account was created, the length of service, records of log-in (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account, and other log files that reflect usage of the account. In addition, providers often have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the account.

20. In some cases, Facebook users will communicate directly with a provider about issues relating to their account, such as technical problems, billing inquiries, or complaints from other users. Providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications.

21. On December 21, 2023, Meta Platforms Inc. was served with a preservation letter under 18 U.S.C. § 2703(f) related to Facebook username "Rachel Richardson" (Facebook Account: 100008586031426).

22. Meta Platforms Inc. owns and operates a free-access social networking website named Facebook that can be accessed at http://www.facebook.com. Facebook allows its users to establish accounts with Facebook, and users can then use their accounts to share written news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

23. Facebook asks users to provide basic contact and personal identifying information to Facebook, either during the registration process or thereafter. This information may include the user's full name, birth date, gender, contact e-mail addresses, Facebook passwords, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers. Facebook also assigns a user identification number to each account.

24. Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network. Facebook assigns a group identification number to each group. A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request." If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other. Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

25. Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts. By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users. A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

26. Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times. A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

27. Facebook allows users to upload photos and videos, which may include any metadata such as location that the user transmitted when s/he uploaded the photo or video. It also provides users the ability to "tag" (i.e., label) other Facebook users in a photo or video. When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video. For Facebook's purposes, the photos and videos associated with a

9

user's account will include all photos and videos uploaded by that user that have not been deleted, as well as all photos and videos uploaded by any user that have that user tagged in them.

28.     Facebook users can exchange private messages on Facebook with other users. Those messages are stored by Facebook unless deleted by the user. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile. In addition, Facebook has a chat feature that allows users to send and receive instant messages through Facebook Messenger. These chat communications are stored in the chat history for the account. Facebook also has Video and Voice Calling features, and although Facebook does not record the calls themselves, it does keep records of the date of each call.

29.     If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

30.     Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages. Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (*i.e.*, non-Facebook) websites. Facebook users can also become "fans" of particular Facebook pages.

31.     Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

32.     Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through

10

the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

33. Facebook also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

34. In addition to the applications described above, Facebook also provides its users with access to thousands of other applications ("apps") on the Facebook platform. When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

35. Facebook also retains Internet Protocol ("IP") logs for a given user ID or IP address. These logs may contain information about the actions taken by the user ID or IP address on Facebook, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action. For example, if a user views a Facebook profile, that user's IP log would reflect the fact that the user viewed the profile, and would show when and from what IP address the user did so.

36. Social networking providers like Meta Platforms Inc. typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, Facebook users may communicate directly with Facebook about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Facebook typically retain records about such communications, including records

11

of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

37. As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, a Facebook user's IP log, stored electronic communications, and other data retained by Meta Platforms Inc., can indicate who has used or controlled the Facebook account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time. Further, Facebook account activity can show how and when the account was accessed or used. For example, as described herein, Facebook logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation. Additionally, Facebook builds geo-location into some of its services. Geo-location allows, for example, users to "tag" their location in posts and Facebook "friends" to locate each other. This geographic and timeline information may tend to either inculpate or exculpate the Facebook account owner.

Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation. For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

38. Therefore, the computers of Meta Platforms Inc. are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

39. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A), by using the warrant to require Facebook (Meta Platforms Inc.) to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

40. Based on the forgoing, I request that the Court issue the proposed search warrant. Because the warrant will be served on Meta Platforms Inc., who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

41. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated. 18 U.S.C. § 2711(3)(A)(i).

## REQUEST FOR SEALING

42. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

_____
Jimmy J. Peek
Task Force Officer
Drug Enforcement Administration

Subscribed and sworn to before me on _____19th_____, January 2024.

_____
AMANDA MAXFIELD GREEN
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with the Facebook user ID 100008586031426 that is stored at premises owned, maintained, controlled, or operated by Meta Platforms Inc., a company headquartered in Menlo Park, California.

## ATTACHMENT B

## Particular Things to be Seized

**I.    Information to be disclosed by Facebook**

To the extent that the information described in Attachment A is within the possession, custody, or control of Meta Platforms Inc. ("Facebook"), regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for each user ID listed in Attachment A:

(a)   All contact and personal identifying information, including for user ID 100008586031426, full name, user identification number, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

(b)   All activity logs for the account and all other documents showing the user's posts and other Facebook activities November 1, 2023 thru January 5, 2024;

(c)   All photos and videos uploaded by those user IDs and all photos and videos uploaded by any user that have that user tagged in them from November 1, 2023 through January 5, 2024, including Exchangeable Image File ("EXIF") data and any other metadata associated with those photos and videos;

(d)   All profile information; News Feed information; status updates; videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which

16

the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e) All records or other information regarding the devices and internet browsers associated with, or used in connection with, those user IDs, including the hardware model, operating system version, unique device identifiers, mobile network information, and user agent string;

(f) All other records and contents of communications and messages made or received by the user from November 1, 2023 through January 5, 2024, including all Messenger activity, private messages, chat history, video and voice calling history, and pending "Friend" requests;

(g) All "check ins" and other location information;

(h) All IP logs, including all records of the IP addresses that logged into the account;

(i) All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(j) All information about the Facebook pages that the account is or was a "fan" of;

(k) All past and present lists of friends created by the account;

(l) All records of Facebook searches performed by the account from November 1, 2023 through January 5, 2024;

(m) All information about the user's access and use of Facebook Marketplace;

(n) The types of service utilized by the user;

17

(o) The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(p) All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

(q) All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

Facebook is hereby ordered to disclose the above information to the government within 14 days of service of this warrant.

## II. Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of 21 U.S.C. §§ 841 and 846 (Drug Trafficking and Conspiracy), involving Rachel RICHARDSON from November 1, 2023 to January 5, 2024, including, for each user ID identified on Attachment A, information pertaining to the following matters:

(a) Evidence indicating the distribution of illegal drugs

(b) Communications between RICHARDSON and possible sources of supply of illegal drugs

(c) Preparatory steps taken in furtherance of the scheme

(d) Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and

events relating to the crime under investigation and to the Facebook account owner;

(e) Evidence indicating the Facebook account owner's state of mind as it relates to the crime under investigation;

(f) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).